HENRY WATERHOUSE TRUST COMPANY, LIMITED, *v.* MILLIE F. RAWLINS ALSO KNOWN AS MELVINA F. RAWLINS AND ALSO KNOWN AS MALVINA F. RAWLINS.

No. 2179.

ARGUED MAY 21, 1936.                    DECIDED JULY 20, 1936.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE METZGER IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY COKE, C. J.

(Circuit Judge Metzger, dissenting.)

Henry Waterhouse Trust Company, Limited, plaintiff, instituted its action in the court below against Millie F. Rawlins, defendant, to recover on a promissory note alleged to have been executed by defendant to plaintiff as payee and upon which at the date the suit was instituted, to wit, September 19, 1933, there was a balance of $6625.25 due, with interest at seven per cent from November 21, 1930. The note bears the date of November 21, 1925, and was originally for $7085.25.

To the complaint defendant interposed an answer pleading the general issue and giving notice of reliance also upon the special defenses of fraud and payment. The defendant included within its answer a setoff in the sum of $4800, together with interest at seven per cent from November 21, 1925, which she alleged was then on deposit or should have been on deposit with plaintiff as trustee of the defendant, and for which amount she demanded judgment against plaintiff.

The cause was tried in the court below with a jury and at the conclusion of the introduction of the evidence by both parties plaintiff moved the court for a directed verdict in favor of plaintiff for the full amount of its claim and a verdict against the defendant upon the demand contained in her setoff. The motion was granted and under the instructions of the court the jury returned its verdict in favor of plaintiff and against the defendant on all issues. Judgment upon the verdict was rendered and the defendant brings the cause to this court for review on a writ of error.

The trust company proved the execution and delivery of the note by defendant to plaintiff, the consideration therefor, demand and nonpayment of the balance owing thereon, with interest, all as alleged in plaintiff's complaint. As against this showing the defendant offered no

evidence. Indeed it is admitted by defendant that plaintiff made out a *prima facie* case on the cause of action set forth in its complaint. Therefore at the close of the case it became the legal duty of the trial judge to grant plaintiff's motion for an order directing a verdict for plaintiff in the full amount of its claim against defendant provided defendant had failed to prove her cause of action alleged in her offset by evidence amounting to more than a scintilla. The evidence of the defendant in support of her setoff is confined almost wholly to her own testimony. This evidence is to the effect that the plaintiff for many years prior to February 16, 1931, was engaged in the usual trust company activities, having a stock and bond department, also a real estate department; the capital stock was owned by R. W. Shingle, A. N. Campbell, and others, but in what proportion the record fails to disclose.

The only evidence introduced at the trial identifying any of the officers of the trust company was that in the year 1909 R. W. Shingle was president and A. N. Campbell was treasurer; that some twenty-one years later, to wit, in 1930, John K. Clarke was treasurer. There is no showing of any kind who the officers or directors of the trust company were during the years 1923, 1924 and 1925, the period within which the transactions made the bases of defendant's setoff are alleged to have occurred. During the year 1923, and for a long period prior thereto, the defendant was an employee in the real estate department of the trust company and continued in that capacity until 1931. During the same period F. E. Steere was manager of the real estate department. Mr. James Laird, in 1923—1925, was an employee in the stock and bond department of the trust company. In 1923 the officers of the Kaimuki Land Company were A. N. Campbell, president and director; F. E. Steere, vice-president and treasurer; W. A. White, treasurer; James Laird, secretary and director; and R. W. Shingle, auditor and director. In the latter part of 1923 the land company,

through its sales representative the trust company, placed on the market a certain tract of land owned by it, situated at Palolo, City and County of Honolulu. In November of that year the defendant purchased the property from the land company through the trust company for the consideration of $3200. According to the testimony of the defendant, shortly following this transaction Mr. Steere informed her that he had been told by Mr. A. N. Campbell that a Mr. Newton complained to him that the property had been sold to the defendant below the market value and that Newton had made an offer of $8000; that Campbell desired to know if the defendant was willing to deed the property back to the land company so that it, in turn, would be in a position to convey to Newton for the increased consideration. The defendant further testified that she thereupon had a conversation with Campbell in which he related certain recent criticism of the Waterhouse Trust Company in connection with other transactions and suggested to the defendant that, to avoid further talk, the defendant reconvey the property to the land company and it would then accept the Newton offer. Miss Rawlins testified that she advised Campbell of her willingness to sell the property for a consideration of $8000 and with that understanding in view she prepared and executed a deed conveying the property to the land company, the consideration therein named being $3200; that shortly thereafter the land company conveyed the property to Newton for the consideration of $8000. The evidence further shows that after the transaction with Newton was concluded, the original consideration paid by the defendant for the property, namely, $3200, was returned to her and the balance of the Newton consideration, that is, $4800, less realtor's commission of ten per cent retained by the trust company as selling agent, was distributed to Shingle and Campbell, the owners of the capital stock of the land company. These payments were made through the trust company, it having received the

money paid by Newton as agent for the land company. The defendant testified that shortly following the conclusion of these transactions and in the latter part of January, 1924, and because she contemplated making an investment, she notified Steere that she wished to withdraw the sum of $4800 which she claimed was on deposit to her credit with the trust company. Steere thereupon conferred with Campbell and advised defendant that Campbell had informed him that she had no money on deposit. The defendant then personally interviewed Campbell whose conversation was confined to the mere statement: "I sold you that land too cheap." Campbell then took refuge in the company's directors' room and closed the door. A few days subsequent the defendant again spoke to Campbell who said that he would talk the subject over with Shingle. Shortly after that Campbell advised defendant that Shingle said they would pay her nothing in excess of $500. The subject was never discussed again between defendant and Campbell but according to defendant's testimony, when some two years later she was negotiating with the trust company, through Laird, to purchase certain corporate stock and executed to the company the promissory note involved in this suit, her alleged account with the trust company was discussed with Laird. She testified at the trial: "Q Now do you remember the occasion, Miss Rawlins, of the execution of this particular note in question? A I do. Q I want you to to tell me with whom, if anyone, you talked relative to the purpose of this indebtedness and the borrowing of this money; who was the first one you talked to? A Mr. Laird. Q And Mr. Laird at that time was an employee of the Henry Waterhouse Trust Company, was he? A Yes, sir. Q And he was also a secretary of the Kaimuki Land Company? A Yes, sir. Q And what did Mr. Laird say to you? A He approached me and asked me if I wanted to buy some Hawaiian Sumatra. Q What did you say? A I said 'Well, you know the circumstan-

ces. I haven't any money just now.' Q What did he say? A He said 'You can buy the stock if you want it.' He said 'I will write out a note and you can have the stock.' Q What else was said? A I said I had no money to pay for it. Q What else was said by he or you? A I said I had no money to pay down and he said it was not necessary, with credit, and I said 'You know the circumstances of this money here,' and he said 'You can pay it off as you see fit.' " The defendant continued to make periodic payments on her promissory note, having kept the interest paid up until the year 1930, and, while the defendant asserts that in 1923 an express trust was created in her favor and that the trust company as trustee was in possession of $4800 belonging to her, she makes no claim that the subject was even mentioned by her or any person connected with the trust company from November, 1925, until she interposed her setoff in the present action in the month of April, 1934, although during six years of that period she was an employee in the office of the trust company. Defendant insists that she proved the averments of her setoff by evidence sufficient to entitle her to go to the jury on the issues; that she made out a *prima facie* case and the trial court committed reversible error in ordering the jury to find against defendant on her setoff.

As we view this appeal it is immaterial whether the defendant's claim is predicated upon an alleged express trust or what is referred to in the statute as an open, current and mutual account. Of course if it falls within the latter category the statutory period of limitations would not start to run until the last item of account (see R. L. 1935, § 3911). It is unnecessary to invoke the statute of limitations. The evidence shows that the land company and not the trust company owned the property which was sold to the defendant and by her subsequently reconveyed to the land company and that the purchase price obtained for the premises belonged to the land com-

pany and that the trust company had no interest whatsoever therein except its realtor's commission amounting to ten per cent of the purchase price. The evidence further shows that out of the consideration paid by Newton for the premises, to wit, $8000, the trust company retained $480, the balance of the commission due it, returned to the defendant the $3200 which she had originally paid for the property, and disbursed the balance of the fund, to wit, $4000, to Shingle and Campbell, the owners of the capital stock of the land company. If, as contended by defendant, the trust company obligated itself to pay defendant the sum of $4800, such an outlay would be a mere gratuity for which the trust company received no consideration.

Defendant argues that because it was shown that Campbell was the treasurer of the trust company in 1909, under the rule that a condition once shown to exist is presumed to continue until it is negatived, it was within the province of the jury to assume that Campbell was still the treasurer in 1923—1925. This rule, however, is by no means without its exception. In fact the rule applies only to permanent and continuing conditions. Evidence of the fact that the wind blows from the east today creates no presumption that it was blowing from the east on the same day of the past week or that it will blow from the same direction a week hence. "The law as to the presumption of the continuance of things or conditions shown to have once existed is frequently stated in such general terms as to be confusing and misleading. The application of a presumption of continuance of the condition of things depends upon what they are. *If the things are such as in their nature are not continuous, then there is no presumption.* The presumption, itself depending on the nature of things, should never be allowed such application as will oppose the nature of such things. *Certain conditions in the affairs of men, or things, may be renewed from time to time, and have no continuity.* Others

are likely, in the general order, to continue, and usually do continue, for a longer or shorter period, and the force or persuasiveness of the presumption of their continuance depends upon information, observation, and experience." *Fifth-Third Nat. Bank* v. *McCrory,* 177 S. W. 1058, 1059. (See, also, *Dunn* v. *Neustadtl,* 129 N. Y. S. 161, 162; *Lincoln Court Realty Co.* v. *Kentucky Title S. B. & T. Co.,* 185 S. W. 156, 160; *Sargent* v. *Waterbury,* 163 Pac. 416, 418; *Burris* v. *Titzell,* 177 N. W. 557, 563; *Doran* v. *United States Building & Loan Ass'n.,* 20 Pac. [2d] 835, 837.) In *Merchants' Nat. Bank* v. *Carpenter,* 165 Atl. 909, 910, where it was shown that the note involved in the litigation was in the possession of the plaintiff bank just before it became due, the jury might safely indulge in the inference that it continued to remain in the possession of the bank until its maturity five days later. The court said: "We will infer that a particular fact continues to exist as long as such fact usually, as a matter of experience, continues to exist (*Smith* v. *Martin,* 93 Vt. 111, 129)." It is a matter of common knowledge that local banking corporations, trust companies, etc., customarily call stockholders' meetings annually at which boards of directors are elected; the board, in turn, selects officers for the ensuing annual period. While this custom may not have been observed in all instances, we think it fair to assume that no trust company actively engaged in business in this Territory would under any circumstances defer the election of a board of directors and its officers for a period of fourteen years. The evidence in this case afforded no basis upon which the jury, acting reasonably, might have inferred that Campbell was the treasurer of the trust company during the period 1923—1925, nor that Laird was other than an employee of the stock and bond department of the trust company during that period, wholly lacking authority to obligate the trust company to pay defendant the sum in question. Even had it been shown at the trial that Campbell and Laird were officers of the

trust company in 1923—1925, it would not follow from that fact, nor could it have been presumed, that they were empowered to transfer $4800 of the funds of the trust company to the defendant as a mere gratuity nor to have created an indebtedness of the trust company to the defendant for a similar purpose. As a general rule a corporation is bound by such contracts, and such contracts only, of a corporate officer or agent as the latter is either expressly or impliedly authorized to make. Another rule generally recognized is that "it is not within the power of the officers or agents of a corporation to give away its assets or property." 14A C. J. 420. (See also *Bassick* v. *Aetna Explosives Co.,* 246 Fed. 974; *Rankin* v. *Bates County Inv. Co.,* 141 S. W. 718.)

We are not unmindful of the doctrine of the law which prescribes that where a motion for a directed verdict is presented, the trial judge must look upon the evidence adduced in the light most favorable to the movee with every reasonable inference which may be drawn from the evidence resolved in his favor. If, having done so, there is, as a matter of law, evidence of that substantial character amounting to more than a scintilla, the case is for the jury and the motion must be denied. (*Schoening & Co.* v. *Miner,* 22 Haw. 196, 203; *Leong Chung* v. *Hee,* 29 Haw. 18; *Chun Quon v. Doong,* 29 Haw. 539.) The rule is stated in *Bishop & Co.* v. *Hawaii Soap Co.,* 28 Haw. 180, as follows: "The plaintiff was entitled to a directed verdict only if there was not evidence sufficient to support a verdict in favor of the defendant. If there was evidence, more than a mere scintilla, from which the jury could as reasonable men find a verdict in conformity with law favorable to the defendant, then a direction such as that requested would be out of place." But the record before us is devoid of evidence amounting to more than a scintilla or of any evidence showing or tending to show that either Campbell or Laird or any other person was authorized by the trust company to create a trust account

or a mutual current account payable to defendant out of the funds of the trust company. Neither express nor implied authority was shown to exist authorizing the alleged donation to the defendant as averred in her setoff. During the trial, while the defendant was on the witness stand reciting the transactions between herself and Laird at the time she obtained the loan from the trust company and executed the note involved in this action, her counsel made the following offer of proof: "We offer to prove by this witness if the court please that at that time, the witness imposed as a condition upon the purchase of Hawaiian-Sumatra Plantations, Limited, that she would only buy the stock and would only borrow the money for the purpose of purchasing the stock; that when she had reduced the indebtedness because of the note to the amount of the unliquidated or rather the disputed demand of $4800, that the note should be canceled and discharged, and that she should be released and discharged from all further obligations thereunder; and that relying upon the said conditions, which were acceptable to Mr. Laird and relying upon such conditions and solely induced thereby, she placed the order and signed the promissory note." The trial judge denied the offer of proof and this ruling is made the subject of one of defendant's assignments of error.

While equity will afford relief against fraud, accident or mistake and under proper allegations will receive parol testimony to alter or even annul a written document, it is, we think, universally the law of negotiable instruments that a defendant may not, in an action at law, show a collateral parol agreement to vary the written term of a promissory note. A contemporaneous oral agreement will not be received in evidence to contradict that which is written. *Nalitzky* v. *Williams,* 237 Fed. 802, involved an action to recover on a promissory note. The court said: "The second defense asserts that when the note was made the bank agreed that the debt might be paid off

by small installments, $50 or $75—an agreement that would be violated if recovery were now permitted. Evidence to this effect was offered, but was correctly rejected; no authority need be cited for the proposition that the unqualified terms of the note cannot be thus varied by parol testimony." (*Smith* v. *Lee Chee*, 27 Haw. 122. See, also, *Pang See & Co., Ltd.*, v. *Aloha Motors, Ltd., ante*, p. 861; *Commercial Nat. Bank* v. *Hutchinson Box Board & Paper Co.*, 158 Pac. 44; *Downing* v. *Brennan*, 122 N. E. 729; *Naftalin* v. *La Salle Holding Co.*, 186 N. W. 128.) In denying defendant's offer of proof, the trial judge merely adhered to the long established parol evidence rule.

After giving careful consideration to all of defendant's assignments of error, we conclude that the judgment appealed from should be and the same is sustained.

*J. V. Hodgson* (*E. C. Peters* on the briefs) for plaintiff in error.

*M. E. Winn* (*G. M. Nowell* with him on the briefs) for defendant in error.

DISSENTING OPINION OF CIRCUIT JUDGE METZGER.

With a full realization of the futility of dissenting opinions, generally, and a recognition of the soundness of every rule of law and evidence laid down in the majority opinion in this case, still, I find myself unable to concur in the opinion and respectfully dissent, believing that the case should have gone to the jury on the evidence.

The evidence showed that the defendant, Miss Rawlins, while an employee in the office of the plaintiff trust company, bought and paid for certain lots of Palolo land, sold to her by her employer, the trust company, acting as the sole selling agent of Kaimuki Land Company, Limited, a mere holding company, owned (except as to a share each to a required number of directors) by R. W. Shingle and A. N. Campbell. Evidence showed that when Miss

Rawlins entered the employ of the trust company, in 1909, Mr. Shingle was the president of that company and Mr. Campbell was its treasurer, and the evidence tends strongly to indicate that these two gentlemen continued in executive or managerial charge of the affairs, course and business policies of the trust company, in and around its offices, during the years of Miss Rawlins's employment in its offices; that, after the time when defendant purchased the land, Mr. Campbell was recognized in the office as the spokesman for the trust company concerning withdrawals of deposits of money made with the company by employees and it was known that Mr. Campbell consulted with Mr. Shingle concerning the direction of some of the affairs of the company.

Evidence showed, in effect, that after the defendant had held the land a short time Mr. Steere, the manager of the land department of the trust company, told her that Mr. Campbell had said to him that a Mr. Newton had complained about the sale to her, and later Mr. Campbell informed her that Mr. Newton was complaining that the trust company had sold the lots to her for $4800 less than he had offered and was willing to pay for them and that he, Campbell, was afraid that this would bring about a renewal of past criticisms against the trust company. in its dealings, unless Mr. Newton could be satisfied. Defendant being desirous of protecting the name and transactions of the trust company, offered to sell the lots at the price offered by Newton and made it clear that she would not sell for less, and expressed a desire to deal directly with Newton, but Mr. Campbell represented to her that the best course in the protection of the trust company would be for her to deed the land back to Kaimuki Land Company, Limited, so that its deed could be given to Mr. Newton, the selling transaction to Newton to be through the trust company. The course directed by Mr. Campbell was followed and her deed was made to the land company, naming the consideration as $3200, the price she had paid,

there being a clearly inferable understanding between her and Campbell, according to her testimony, that the sale price to Newton, $8000, when collected by the trust company, would be due to her, would be her money, and she understood from her talk with Campbell that this sum would be credited to her account by and with the trust company. The trust company made the sale to Newton, delivered to him the deed of Kaimuki Land Company and received the purchase money of $8000. This was substantial evidence of an express trust in the trust company of the fund of $8000, with Miss Rawlins as *cestui que trustant*. Mr. Campbell represented to her that he was speaking for and acting in behalf of the trust company in making the deal with her and she, an employee in the office for years and apparently familiar with its open affairs and the manner and authorities through which it transacted business, accepted the apparent authority of Campbell to bind the company in a deal which would cost it nothing and was represented to be for its benefit.

There was some evidence tending to show that Mr. Campbell never intended to create a trust on the part of the trust company and later intended to repudiate any idea that one had been established. He instructed the manager of the real estate department of the company that Miss Rawlins had nothing on deposit with the trust company, and told her that he had sold her the land too cheap, and later told her that Mr. Shingle had said that he was willing that they should allow her a profit of $500, only.

The sale to Newton occurred December 18, 1923. At that time and long prior thereto and continuing thereafter until March 31, 1931, Miss Rawlins had an account, or accounts, with the trust company, arising in part from credits of salary from month to month and in part from cash deposits made by her, and the credits of interest and proceeds of sales and earnings of property and securities, made and received for her account; against this she drew

cash, ordered purchases made for her of merchandise and securities, or the payment of purchases made by her, and was debited with interest charges for sums owing by her to the trust company. The trust company showed by evidence put in by it that its accounts with her were kept as three or more separate accounts under different ledger headings. She testified that she did not know that the company kept more than one account covering all of her transactions with it. The company introduced in evidence her receipt for the closing of a "special" account, which its books showed contained a credit to her for $3200 directly following the sale of the Palolo lots to Newton. She testified that she did not know what the trust company had done with the $8000 it received from the sale, but had never intended or knowingly given it any acquittance of its liability to her for that amount. Apparently there was no balancing or stating of accounts, generally, between them for a number of years. No showing of such statements was made and the account or accounts, in part at least, continued as open, current and mutual accounts, thus tending to remove a question of the running of the statute of limitations against her claim.

There was, in my opinion, sufficient evidence to have sustained a verdict upon findings by a jury that through the management of the trust company, and for the apparent and stated benefits and purposes of the trust company, she was diverted from dealing directly with Mr. Newton and induced to deed her land back to the original title holder so that upon the record it might be conveyed to Mr. Newton as a purchaser from the original owner, and that the $8000 collected from him by the trust company was at all times defendant's money, and that the evidence of disavowal or repudiation by the trust company following these transactions was not brought to her intelligence with sufficient clarity and certainty, in view of her situation as an employee under the managing officers of the company, as to cause her as a reasonably prudent per-

son, exercising reasonable diligence, to believe that the full payment would not finally be forthcoming to apply against the note that an employee of the company in charge of its stock and bond department had induced her to make to the company in the purchase of stocks.

The judgment appealed from should be set aside and the cause remanded to the trial court for a new trial.