# SUNG WHA KIM LYU *v.* JAMES S. SHINN, M.D.

## NO. 2714.

ARGUED NOVEMBER 13, 1952.    DECIDED JUNE 2, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY TOWSE, C. J.

In an action for the wrongful death of her son which occurred during a tonsillectomy, the plaintiff in error sought damages premised upon the alleged negligence of the defendant in error in performing the operation.

A motion for nonsuit was granted at the conclusion of the plaintiff's evidence upon the grounds that the doctrine of *res ipsa loquitur* did not apply to the facts established, and that there was not sufficient evidence amounting to more than a scintilla, warranting submission of the issues to the jury.

Writ of error brings that ruling to this court.

The evidence material to the issues before us will be reviewed in its most favorable interpretation. (*Estate of Rabinowitz,* 58 Cal. Opp. [2d] 106, 135 P. [2d] 579; *Louzader* v. *James,* 107 S. W. [2d] 976; *Sullivan* v. *S. S. Kresge Co.,* 236 Mo. App. 1191, 163 S. W. [2d] 811; *Jackson* v. *Browning,* 224 N. C. 75, 29 S. E. [2d] 21.) That evidence established that the deceased underwent a thorough preoperative examination and was found to be .in good condition. The operation was scheduled and performed in the defendant in error's office. Two girls and two boys, who were members of the office of civilian defense, Kalihi aid station, had been invited by defendant in error to observe the operation as a practical demonstration which would benefit them in their civilian-defense duties. Their ages were not established. The defendant in error's office assistant and the office assistant of a doctor

occupying adjoining offices were present to assist. Neither were registered nurses although the latter had assisted in office operations, particularly in the administration of general anesthetics, over a period of six years. Ether as a general anesthetic was administered by the drop method. The record indicates that one of the two office assistants administered the ether. This latter fact constitutes one of the principle issues determinative of the alleged negligence of the defendant in error.

During the operation, one of the boys from the aid station was checking the pulse rate by the forearm method. The defendant in error's office assistant was also recording the pulse at the neck. It was not established whether the aid station attendant was participating in the pulse reading with the acquiescence or at the request of the defendant in error. After removal of one tonsil and as the defendant in error was about to remove the other, the aid station attendant commented that the patient's forearm pulse was weakening, and called this fact to the doctor's attention. There is no evidence establishing or indicating that at or about this time the trained assistant noted any change or weakening in the pulse rate at the neck or that she so commented or notified the defendant in error. Thereafter it appears that the defendant in error exercised all of the skill and means at his command to revive the patient. A doctor in a nearby office was summoned to assist. Adrenalin and artificial respiration were administered. A pulmotor was employed for one half hour. All efforts at revival were unsuccessful. Cause of death was certified as "acute pulmonary edema from inhalation and administration of ether."

Medical testimony adduced at the trial established that there are other signs in addition to a weakening pulse rate which indicate that a patient under anesthesia is being ad-

ministered ether in an excessive amount: "* * * changes in the color of the skin; in the rate and character of the pulse; in the rate and depth of breathing, and the size of the pupils of the eyes, the presence or absence of gagging; certain reflexes of the eyelids; * * *." A standard of practice applicable to office tonsillectomy operations in this city was also established. No adverse testimony was presented upon the issue of defendant in error's professional training. He did admit, however, that it was possible to revive a patient in similar circumstances by use of a pulmotor in excess of one half hour.

Four errors are assigned. They raise two issues: First, whether the trial court erred in ruling that the doctrine of *res ipsa loquitur* did not apply to the cause; second, did the trial court err in its finding that there was no substantial evidence of negligence, amounting to more than a scintilla, from which the jury could have found the defendant negligent under the evidence adduced by the plaintiff.

The test almost uniformly applied to determine whether the doctrine applies in malpractice suits is whether all the ultimate facts alleging negligence, or some of them, are required to be established by expert testimony; or whether "* * * a layman is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised." (*Cavero* v. *Franklin Etc. Benevolent Soc.*, 36 Cal. [2d] 301, 309, 223 P. [2d] 471; see 70 C. J. S., Physicians and Surgeons, § 62; 41 Am. Jur., Physicians and Surgeons, § 127 for collection of authorities.) Two types of this class of suits are first, situations wherein the alleged negligence is predicated upon the use of unsterile instruments generally; and second, operations wherein a foreign or infectious substance is negligently deposited or left in

the body. The latter type are referred to as "sponge cases."

The generally approved rule upon inapplicability of the doctrine is that it does not apply where the common knowledge or experience of men is not extensive enough to permit it to be said that the plaintiff's condition would not have existed except for negligence of the person to be charged. (*Alexander* v. *Hill,* 174 Va. 248, 6 S. E. [2d] 661; *Quinley* v. *Cocke,* 183 Tenn. 428, 192 S. W. [2d] 992; *Wells* v. *McGehee,* 39 So. [2d] 196; see 70 C. J. S., Physicians and Surgeons, § 62; 41 Am. Jur., Physicians and Surgeons, § 128 for collection of authorities.) The rule is stated with clarity in the case of *Loudon Et Al.* v. *Scott Et Al.,* 58 Mont. 645, 194 Pac. 488, 12 A. L. R. 1487; "The gravamen of this case is negligence, and negligence cannot be *inferred from the fact alone* that the patient died. * * * The Maxim *'res ipsa loquitur,'* has no application to a case of this character. * * * Negligence is not to be presumed; it must be proved * * * and the plaintiffs were required to assume the burden of proving the negligence charged and that * * * death resulted proximately from such negligence * * *." (Emphasis added.) The reason for the rule is cogently stated in *Ewing* v. *Goode,* 78 Fed. 442, 443: "A physician is not a warrantor of cures. If the maxim 'res ipsa loquitur,' were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' " (See 41 Am. Jur., Physicians and Surgeons, §§ 103, 104, 127; 70 C. J. S., Physicians and Surgeons, § 62 for collection of authorities.)

The doctrine, on the other hand, has been held applicable in certain classes of malpractice suits, particularly

those designated as "sponge cases." The elements of the doctrine as applicable to those cases are clearly present: "Where the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care." (*Key* v. *Caldwell,* 39 Cal. App. [2d] 698, 702, 104 P. [2d] 87; see also *Mitchell* v. *Saunders,* 219 N. C. 178, 13 S. E. [2d] 242; 41 Am. Jur., Physicians and Surgeons, § 97, 70 C. J. S., Physicians and Surgeons, § 481.)

It further appears to be the well-established rule that a plaintiff may rely upon the doctrine, the elements thereof being present, in situations wherein both the doctrine *and* the specific acts of negligence alleged are relied upon, but the specific acts alleged do *not clearly constitute negligence.* (*Whitaker* v. *Pitcairn,* 351 Mo. 848, 174 S. W. [2d] 163; *Markowitz* v. *Libert and Obert,* 23 N. J. Misc. 281, 43 A. [2d] 794; *Loos* v. *Mountain Fuel Supply Co.,* 99 Utah 496, 108 P. [2d] 254; *Anderson* v. *Harrison,* 4 Wash. [2d] 265, 103 P. [2d] 320; *Anderson* v. *Eastern Minnesota Power Co.,* 197 Minn. 144, 266 N. W. 702; *Davis* v. *Teche Lines,* 200 La. 1, 7 So. [2d] 365.) The rule is well stated in *Angerman Co., Inc.* v. *Edgemon et ux.,* 76 Utah 394, 401, 290 Pac. 169, 79 A. L. R. 40:

"When it is shown that a person has sustained an injury under circumstances where the maxim referred to applies, he is not required in the first instance to prove any particular defect by evidence other than by the prima facie presumption, although the facts with respect to some defect are unnecessarily alleged with particularity in the complaint * * *. Because the plaintiff alleged and attempted to prove more than he was required to do did not

displace the presumption of negligence as an element in his case nor change the rule of evidence with respect to the burden of proof." And, in the converse, if the specific acts of negligence relied upon clearly show a cause of action, the plaintiff is thereby barred from relying upon the doctrine. (*Adams* v. *LeBow,* 236 Mo. App. 899, 160 S. W. [2d] 826; *Miratsky* v. *Beseda,* 139 Neb. 229, 297 N. W. 94; see 70 C. J. S., Physicians and Surgeons, § 62; 41 Am. Jur., Physicians and Surgeons, § 127 for collection of authorities.) "* * * it would then clearly appear from the evidence what negligence brought about the injury and, under such circumstances, there is no place for the application of *res ipsa loquitur.*" (*Adams* v. *LeBow,* 236 Mo. App. 899, 910, 160 S. W. [2d] 826.)

We conclude upon the foregoing authorities, that a plaintiff may elect to rely upon the doctrine even though in doing so he *also* attempts to rely upon specific acts of negligence which in themselves are inconclusively proved. We further conclude it to be clearly preferable, for reasons of public policy (*Ewing* v. *Goode, supra*), that a malpractice suit be placed upon singularly divergent principle, and that to apply the doctrine the circumstances are required to be such that laymen (as distinguished from physicians and surgeons) are able to infer from the facts without the aid of expert medical testimony that an act or acts of misfeasance or nonfeasance had been committed or omitted.

Applying those principles to the facts before us, the trial judge was manifestly correct in ruling that the doctrine did not apply.

Plaintiff in error contends that the trial court erred in granting the motion for nonsuit in that there were sufficient specific acts of negligence alleged and proved to warrant submission of the issue of negligence to the jury. The

pertinent facts bearing upon this issue were that there were several medically inexperienced invitees observing the operation (the record does not affirm or negate whether with consent of the patient or his parents) ; that defendant in error was assisted by a person who was not a registered nurse but who was nevertheless trained in the practice of office operations, and who administered the anesthetic, checked the patient's pulse, and failed to notify the doctor of any change in its rate or condition; that there were no other trained medical assistants present upon which the doctor could rely for other indicia of excessive anesthesia, nor is it denied that these conditions appeared; and finally that efforts at revival by artificial respiration were voluntarily terminated after only one half hour's application, the defendant in error himself admitting that other similar cases had been successfully revived by longer periods of pulmotor application.

We are not here concerned with the weight of that evidence, but solely as to its sufficiency to support the allegations of the complaint when considered in its most favorable light with every reasonable inference being accorded to support that evidence. (*Waterhouse Trust Co.* v. *Rawlins,* 33 Haw. 876.) If there is evidence, amounting to more than a scintilla, to support the allegation of the complaint the motion for a nonsuit should have been denied. (*Waterhouse Trust Co.* v. *Rawlins, supra; Holstein* v. *Benedict,* 22 Haw. 441.) In *Holstein* v. *Benedict,* 22 Haw. 441, 445, this court held: "* * * the expression 'more than a scintilla of evidence' means 'some substantial evidence [and authorities cited].' "

Defendant in error contends that no standard of practice existing in the community at the time the operation was performed was established in order to permit comparison of the evidence adduced with such standard. It is

asserted that without proof of such standard no means exists by which the jury could find negligence, and consequently the motion for nonsuit was properly granted. As a general rule, this principle of the law of negligence is applicable to malpractice suits. (*Boyce* v. *Brown,* 51 Ariz. 416, 77 P. [2d] 455; *Lewis* v. *Johnson,* 12 Cal. [2d] 558, 86 P. [2d] 99; *Howell* v. *Jackson,* 65 Ga. App. 422, 16 S. E. [2d] 45; *Whitstine* v. *Moravec,* 228 Iowa 352, 291 N. W. 425; see 70 C. J. S., Physicians and Surgeons, §§ 42, 43; 41 Am. Jur., Physicians and Surgeons, §§ 86, 87.) In such suits medical experts only are qualified to express an opinion upon what constitutes the proper surgical technique; however a recognized qualification of this principle is that such evidence should not be admitted to the exclusion of other evidence of existing conditions and results surrounding the operation. (*Byrom* v. *Eastern-Dispensary and Casualty Hospital,* 78 U. S. A. D. C. 42, 136 F. [2d] 278.)

We find the answer to this contention in the testimony of the medical expert who testified on behalf of the plaintiff below. The witness was asked what we deem to be an exhaustive and manifestly fair hypothetical question (covering four pages of the transcript) and which embodied essentially all of the facts presented by the plaintiff's evidence. In response thereto he testified :

"A   My opinion is that there should have been some extra signs besides the pulse.

"Q   Will you please enumerate what these extra signs are or should have been.

"A   Well, in the first place, with ether, the thing we usually goes to first is your respiration; that becomes slow and irregular and shallow, and finally ceased, in a case where it terminates fatally. Then your other signs is your pupil signs, which dilate, and will not react to light stim-

ulants. And then there is the heart, which is probably, for most people, the easiest way to determine, is to determine by the pulse rate, that usually goes last; then of course there is your other signs of your skin; your skin signs, the skin becomes cold and clammy; there is also a blood pressure sign, but ordinarily in tonsillectomy, in an operation of this sort, the blood pressure is very, very seldom used. Those are the signs in general."

He further testified that other indicia of excessive application or maladministration of ether should have developed and that in such circumstances, where a patient's breathing becomes irregular and weak, that chromine, a respiratory stimulant, is the recognized reviving drug to administer.

The foregoing testimony in our opinion established a standard of professional and operation technique sufficient for the jury to compare that standard with the evidence adduced by the plaintiff, they thereby jointly constituting sufficient evidence, amounting to more than a scintilla, warranting determination by the jury.

The ruling granting the motion for nonsuit is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*O. P. Soares* (also on the briefs) for plaintiff in error.

*S. Kashiwa* (*G. Kashiwa* with him on the brief) for defendant in error.