FROH, and husband, Plaintiffs-Appellants, v. MILWAUKEE MEDICAL CLINIC, S.C., and others Defendants-Respondents.†

Court of Appeals, District I

*No. 77–622. Submitted on briefs July 5, 1978.—Decided August 16, 1978.*

(Also reported in 270 N.W.2d 83.)

---

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Mulcahy & Wherry S.C.*, with *Carl L. Ricciardi* of counsel, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Arnold, Murray, O'Neill & Schimmel,* with *Robert C. Watson* of counsel, of Milwaukee.

Before DECKER C.J., CANNON P.J., and MOSER J.

MOSER, J.   The issue is whether the trial court committed prejudicial error in refusing to instruct the jury on the doctrine of res ipsa loquitur.

The two elements of res ipsa loquitur that must be present before the application of the doctrine of res ipsa loquitur are: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) that it must be caused by an agency or instrumentality within the exclusive control of the defendant. *Turk v. H. C. Prange Co.,* 18 Wis.2d 547, 553, 119 N.W.2d 362 (1962); *Fehrman v. Smirl,* 20 Wis.2d 1, 26, 121 N.W.2d 255 (1962).

The procedural effect of res ipsa loquitur in Wisconsin is that of a permissible inference rather than a rebuttable presumption. *Weggeman v. Seven Up Bottling Co.,* 5

Wis.2d 503, 509, 93 N.W.2d 467 (1958). As a permissible inference the effect of the doctrine of res ipsa loquitur is merely to permit the jury to draw a reasonable inference from circumstantial evidence. *Fehrman v. Smirl, supra* at 21. In *Fehrman v. Smirl* the supreme court of this state permitted the use of res ipsa loquitur as proper in medical malpractice cases, reversing its former position, but stated on page 22 as follows:

"The general rule is that the doctrine of res ipsa loquitur may be involved in medical malpractice actions only where a layman is able to say as a matter of common knowledge that the consequence of the professional treatment are not those which ordinarily result if due care is exercised and the doctrine is not applicable when expert medical testimony is required to show negligence on the part of the practitioner."

Courts have generally recognized that the leaving of a foreign object in the patient's body is sufficient in itself to create a presumption or inference of negligence or to give rise to the application of res ipsa loquitur. The general theory is that such an omission, within the common knowledge of laymen, could not occur without negligence. *Burke v. Washington Hospital Center,* 475 F.2d 364 (D.C. Cir. 1973) (surgical sponge in abdomen) ; *Swanson v. Hill,* 166 F. Supp. 296 (D.N.D. 1958) (forceps in abdomen) ; *Bowers v. Olch,* 120 Cal. App.2d 108, 260 P.2d 997 (1953) (curved surgical needle in abdomen) ; *Butts v. Watts,* 290 S.W.2d 777 (Ky. 1956) (broken tooth left in socket after extraction) ; *Druilhet v. Comeaux,* 317 So.2d 270, *cert. denied* 321 So.2d 363 (La. 1975) (sponge in vaginal tract) ; *Wells v. Woman's Hospital Foundation,* 286 So.2d 439, writ denied 288 So.2d 646 (La. 1974) (iodoform gauze pad in abdomen) ; *Hestbeck v. Hennepin County,* 297 Minn. 419, 212 N.W.2d 361 (1973) (sponge in abdomen) ; *Nicholson v. Sisters of*

*Charity of Providence,* 255 Or. 251, 463 P.2d 861 (1970) (safety pin in abdomen) ; *Thomas v. Hutchinson,* 442 Pa. 118, 275 A.2d 23 (1971) (sponge in abdomen).

The trial judge attempted to distinguish the application of res ipsa loquitur to the cases involving the failure to remove surgical tools and sponges from the insertion of a drain that is to remain in the incision after surgery is completed for therapeutic reasons. That distinction is invalid because it overlooks the medical testimony from Dr. Schmidt that presence of the drain for more than 7 days will result in infection. The attempted distinction also overlooks the testimony that the surgeon was unable to locate the drain or to account for its disappearance although it should have been removed within a short period of time after its insertion.

The doctor's adverse testimony shows that the result achieved here was not ordinary in that the drainage occurring to this woman occurred far beyond the period of time that normally occurs in an operation of this type where a Penrose drain is used.

It is further obvious to this court that the doctor was in complete and exclusive control of the patient from the time of the operation, January 19, 1973, until April 2, 1973, when he removed the drain. This meets the test of *Turk v. H. C. Prange, supra.*

We are clearly of the opinion that a layman is able to conclude as a matter of common knowledge that a Penrose drain of this type left inside the body of an individual beyond the time that it serves the purpose for which it was inserted will cause infection as occurred in this case as a result of the professional treatment herein.

We are further of the opinion that a layman can have an opinion that the consequences of this professional treatment are not those which ordinarily result if due

care is exercised in that the doctor testified that when drains are left within the body there is evidence that infection will result if they are in that body for a period of more than 7 days. This does not require medical expert testimony. This meets the test of *Fehrman v. Smirl, supra.*

We note below testimony in this case, particularly that from Dr. Schmidt which in our opinion would support a finding by a trier of fact that the surgeon was negligent. Because another trial of this matter is required it is unnecessary for us to express an opinion with respect to whether too much was proved to entitle the plaintiffs to a res ipsa loquitur instruction. We note that at the retrial it will be necessary for the trial judge to determine upon the basis of the record at that time whether the record justifies a res ipsa loquitur instruction. *Turtenwald v. Aetna Casualty & Surety Co.,* 55 Wis.2d 659, 667–669, 201 N.W.2d 1 (1972).

During the trial and as a part of the direct examination of the defendant by his counsel the defendant in responding to a question stated as follows:

"We had started advancing the drain I believe on the 23rd. We advanced it. If you leave a drain in too long, it is a foreign body as we all know, and you are going to get infection going up the drain track and any drain that's left in long enough over say seven days is going to start putting some pus out around the drain. You just expect this."

Dr. Schmidt in answer to questions while being adversely questioned by the plaintiffs' counsel advised the jury and the court that he had been employed by the defendant Milwaukee Medical Clinic since July 11, 1972, as a general surgeon; that he received a Bachelor of Science degree from Yale University in 1960; that he graduated from Cornell University Medical School in 1964; and that he served his internship at the University Hospital in Cleveland and completed a residency in gen-

eral surgery at the University Hospital in Cleveland in in 1972. Further he testified that he was, prior to and at the time of the trial, an assistant clinical professor of surgery at the Medical College of Wisconsin, Milwaukee, Wisconsin, and finally that he had placed drains in patients since 1964 frequently when doing surgery whenever indicated. He is an expert and has testified that leaving a drain in more than 7 days will cause infection and drainage.

In *Trogun v. Fruchtman*, 58 Wis.2d 569, 584, 207 N.W.2d 297 (1973), the supreme court discusses the elimination of the "locality rule" in determining negligence in medical malpractice cases in favor of a standard which is not based upon geographical location, and quotes from *Shier v. Freedman*, 58 Wis.2d 269, 283, 206 N.W.2d 166 (1973) as follows:

"Henceforth, in instructing juries in medical malpractice cases, the jury should be told in substance that a qualified medical (or dental) practitioner, be he a general practitioner or a specialist, should be subject to liability in an action for negligence if he fails to exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances."

In order to hold a physician liable, the burden is upon the plaintiff to show that the physician failed in the requisite degree of care and skill. That degree of care and skill can only be proved by the testimony of experts. Without such testimony the jury has no standard which enables it to determine whether the defendant failed to exercise the degree of care and skill required of him. *Fehrman v. Smirl, supra.*

We are of the opinion that over and above the issues of res ipsa loquitur that the testimony of Dr. Schmidt quoted

above is sufficient to place this matter in the field of negligence and malpractice by a physician.

The theory of res ipsa loquitur is not available against the defendant Columbia Hospital in that there is a complete absence of any meeting of the test of control as required in res ipsa loquitur. *Turk v. H. C. Prange Co., supra.*

In establishing the negligence of a hospital the necessity for expert testimony depends upon the type of negligent acts involved. Expert testimony should be adduced concerning those matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind and which requires special learning, study or experience. *Payne v. Milwaukee Sanitarium Foundation, Inc.,* 81 Wis.2d 264, 275–276, 260 N.W.2d 386 (1977). No expert testimony was involved in this trial as it addresses itself to the defendant hospital. Since res ipsa loquitur does not apply to the hospital for lack of control there is no proper evidentiary escort concerning negligence of the hospital by any expertise. This cause of action must be dismissed against Columbia Hospital.

*By the Court.*—Judgment is reversed and a new trial is ordered as to Milwaukee Medical Clinic, S.C., and St. Paul Fire & Marine Insurance Company; judgment affirmed as to Columbia Hospital.