Sinora GLENN and Christopher Glenn, Plaintiffs-Respondents,

v.

Michael T. PLANTE, M.D. and Family Health Plan, Defendants-Appellants.†

Court of Appeals

*No. 02–1426. Submitted on briefs March 5, 2003.—Decided April 15, 2003.*

## 2003 WI App 96

(Also reported in 663 N.W.2d 375.)

† Petition to review granted 10-1-03.

 ██

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael P. Russart* of *Hinshaw & Culbertson*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *John K. Brendel* of *Brendal Law Office*, of Brookfield.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Dr. Michael T. Plante appeals from the circuit court's order[1] denying his motion to dismiss the medical malpractice suit of Sinora Glenn and her husband, Christopher.[2] Dr. Plante argues that the circuit court incorrectly concluded that, under

---

[1] A petition for leave to appeal a non-final order was filed on June 12, 2002; the petition was granted on July 8, 2002.

[2] Approximately one year before the circuit court's non-final order, both defendants filed with the Milwaukee County circuit court a restraining order that was issued from the Dane County circuit court prohibiting continuation of any lawsuit against Family Health Plan due to its federal bankruptcy proceedings. The parties, however, stipulated to the continuation of the action against Dr. Michael Plante. Thus, although Family Health Plan remains in the caption of this case, it is not a party in this appeal.

*Burnett v. Alt*, 224 Wis. 2d 72, 589 N.W.2d 21 (1999),[3] the Glenns had shown "compelling circumstances" to require expert testimony from Dr. Charles H. Koh and, therefore, the court erred in denying his motion to dismiss.

¶ 2. We acknowledge the merits of Dr. Plante's argument. We conclude, however, that under the unusual circumstances of this case, the circuit court appropriately exercised discretion in requiring Dr. Koh to testify and, therefore, in denying Dr. Plante's motion to dismiss. Accordingly, we affirm.

## I. BACKGROUND

¶ 3. The Glenns' complaint alleged, in part, that in 1995, while performing surgery on Ms. Glenn, Dr. Plante, who specializes in obstetrics and gynecology, "also performed a right oophorectomy without her knowledge and certainly without any prior disclosure that such oophorectomy would be necessary or even occur." The Glenns further allege that Ms. Glenn, then in her mid-twenties, continued to suffer abdominal pain ultimately leading Dr. Plante to perform a hysterectomy, even though, "at such time, Dr. Plante knew, or should have known, that she wished to have additional children." The complaint continued:

> [Dr. Plante], in providing such medical care and advice, failed to exercise that degree of care, skill and judgment which physicians reasonably and usually otherwise exercise under such circumstances in that he

---

[3] The parties, the circuit court, and subsequent case law refer to this case as both *Burnett v. Alt* and *Alt v. Cline*. For the most part, however, they all use "*Alt*" as the short-reference; therefore, we will also refer to this case as "*Alt*."

failed to properly use methods of diagnoses as were available to him to determine the need or extent of her medical problem and failed to provide . . . Sinora . . . with such information necessary to disclose to the patient alternative methods of diagnosis and/or treatment, thereby denying the patient the right to choose a proper procedure which was to be used[,] and secured her consent thereby without providing her with adequate information which would have informed her more fully prior to giving her consent; that, had she known that the remedy was not a cure and there would be future symptoms thereafter, she would not have authorized that operation nor given her consent[.]

¶ 4. Following her treatment by Dr. Plante, Ms. Glenn was treated by Dr. Koh. In his February 24, 2000 letter to the court, Dr. Koh opined that various aspects of Dr. Plante's treatment of Ms. Glenn were inappropriate and, among other things, "the hysterectomy and the removal of the left ovary [were] unwarranted." In that same letter, however, Dr. Koh also advised that he was reluctant to testify. He explained that "most doctors do not wish to play a leading role in any malpractice case against another local physician." In a subsequent letter to the Glenns' counsel, Dr. Koh reiterated that Ms. Glenn's "treatment of multiple surgeries culminating in her sterility . . . was unusual and may not meet the standard of care," but also that he "would not be [an] expert witness as [he] was her treating physician."

¶ 5. According to the Glenns' pretrial report, Dr. Koh was to testify "as to the medical finding[s] he experience[d] regarding the medical problems of [Ms. Glenn], his patient, and the diagnosis and treatment made thereof; his prognosis for her future; his opinions of the medical care she received from Dr. Plante as compared to applicable standards and their profession." The Glenns' counsel, however, failed to timely file their

list of expert witnesses, together with the experts' reports, pursuant to the scheduling order.

¶ 6. For several years, the case traveled through the state courts of six different circuit court judges and was further complicated by the federal bankruptcy proceedings for Family Health Plan. The procedural history is summarized in the circuit court's eighteen-page decision denying Dr. Plante's motion to dismiss. Because that procedural history was important to the circuit court's discretionary decision, and also because that history is a factor in our evaluation of whether the court erred in reaching its "compelling circumstances" conclusion, we summarize the sequence of events leading to this appeal:

- **March 8, 1999:** Glenns file their complaint; case is assigned to Judge Christopher Foley.

- **March 17, 1999:** Parties file request for mediation.

- **April 6, 1999:** Judge Foley sets scheduling conference for June 10, 1999; Defendants file answer to complaint.

- **April 15, 1999:** Judge Foley cancels June 10 scheduling conference; re-sets it for July 1, 1999.

- **April 20, 1999:** Mediation scheduled for June 30, 1999.

- **June 7, 1999:** Defendants request substitution for Judge Haese after notification that case would be transferred to him upon judicial rotation.

- **June 9, 1999:** Case reassigned to Judge Diane Sykes.

- **June 10, 1999:** Judge Sykes sets scheduling conference for June 23, 1999.

- **June 23, 1999:** Judge Sykes holds scheduling conference; requires plaintiffs to name expert witnesses by September 23, 1999 and defendants to name expert witnesses by December 23, 1999.

- **June 30, 1999:** Mediation hearing held.

- **July 12, 1999:** Plaintiffs file jury demand.

- **October 28, 1999:** Judge Sykes sets pre-trial conference for January 25, 2000; notifies parties that case will be reassigned to Judge Dominic Amato on November 8, 1999.

- **December 27, 1999:** Defendants file motion to dismiss for failure to comply with scheduling order.

- **January 10, 2000:** Defendants file pre-trial report; also file various motions in limine.

- **January 21, 2000:** Plaintiffs file witness list naming Dr. Koh, Dr. Sul Chung and Dr. David Nash[4] as expert witnesses; also file pre-trial report and motion to amend scheduling order to extend time to name expert witnesses.

---

[4] Dr. Nash was originally named as an expert witness because he reviewed Ms. Glenn's medical records and concluded that the care she received from Dr. Plante was not proper. The Glenns withdrew Dr. Nash as an expert because he was reluctant to testify against another local physician and, they believed, he would have become a hostile witness.

- **February 3, 2000:** Judge Amato orders plaintiffs limited to Dr. Koh and Dr. Chung[5] as expert witnesses; grants defendants additional time to name additional experts.

- **March 14, 2000:** Judge Amato schedules trial for March 5, 2001.

- **December 20, 2000:** Judge Amato recuses himself; case reassigned to Judge David Hansher.

- **January 2, 2001:** Case reassigned to Judge Maxine White.

- **January 12, 2001:** Judge White sets scheduling conference for January 29, 2001.

- **January 29, 2001:** Defendants file restraining order, dated October 16, 2000, prohibiting continuation of case against Family Health Plan due to its federal court bankruptcy proceedings.

- **May 22, 2001:** Parties file stipulation permitting continuation of suit against Dr. Plante.

- **January 30, 2002:** Plaintiffs inform court of Dr. Koh's unavailability for February 4 trial because he would be out of town; court vacates trial date.

- **February 7, 2002:** Plaintiffs move for an order amending scheduling order for purposes of extending time to name expert witnesses.

---

[5] Dr. Chung, a psychiatrist, was originally named as an expert witness because he treated Ms. Glenn for depression after the hysterectomy. The Glenns, however, withdrew him as an expert to "avoid clouding the issue."

- **February 15, 2002:** Dr. Plante moves to dismiss.

¶ 7. It is undisputed that the Glenns' counsel failed to name expert witnesses by September 23, 1999, as required by Judge Sykes' order. As the Glenns concede:

> The . . . error [was] in failing to recognize that despite all of the changes of judges and the many, many notices received, the original scheduling conference held by Judge Sykes in April, even before the mediation hearing was held, had never been altered and the deadline for the filing of the Plaintiffs' Witness List, including experts, had passed.

¶ 8. Ultimately, the case came to Judge White's branch of the circuit court where, as noted, the Glenns again moved for additional time for an extension to amend the scheduling order in order to locate other expert witnesses. Judge White denied the motion concluding that, notwithstanding the confusion that may have been generated by the protracted case history, counsel simply did not have a justifiable excuse for missing the deadline. The Glenns, conceding Judge White's discretionary decision on that point, do not appeal the denial of their motion.

¶ 9. Judge White also determined, however, that "Dr. Koh is a treating physician whose opinion/testimony concerning his treatment of Ms. Glenn is unique and therefore should be compelled." Judge White concluded, therefore, that "[b]ecause Dr. Koh, despite his refusal to testify, can be compelled to do so under *Alt*, the plaintiff will have an opportunity to present the required medical support for her claim." Accordingly, Judge White denied Dr. Plante's motion to dismiss; Dr. Plante challenges that ruling.

## II. DISCUSSION

■

¶ 10. A plaintiff must supply an expert witness to testify as to causation and standard of care in medical malpractice actions involving matters beyond a jurors' knowledge as laypersons. *See Froh v. Milwaukee Med. Clinic, S.C.,* 85 Wis. 2d 308, 317, 270 N.W.2d 83 (Ct. App. 1978). Without Dr. Koh, the Glenns would be left without testimony from a crucial, treating physician and without testimony from any expert on standard of care and causation.

■

¶ 11. Dr. Plante argues that Judge White misapplied *Alt*. He contends that the required "showing of compelling circumstances" under *Alt* cannot come about when, as here, the plaintiffs' failure to comply with a scheduling order created those very circumstances. Thus, Dr. Plante argues, Dr. Koh cannot be compelled to testify and, therefore, the Glenns' suit, lacking an expert witness on standard of care and causation, must be dismissed. We disagree.

■

¶ 12. As the supreme court reiterated in *Alt*, testimonial privileges "are the exception, not the rule," and the parties in litigation " 'are entitled to every person's evidence' " absent an explicit or implicit statutory exception. *Alt*, 224 Wis. 2d at 85 (citation omitted). An expert witness has a "broad qualified privilege" to not testify and, "absent a showing of compelling circumstances, an expert cannot be compelled to give expert testimony whether the inquiry asks for the expert's existing opinions or would require further work." *Id.* at 89.

¶ 13. Moreover, in every given case, a circuit court should exercise discretion in determining whether an expert's qualified privilege to refuse to testify outweighs "the competing interests of the needs of the court and litigants for testimony." *Id.* at 89. And a court must make that determination "under the circumstances presented." *Id.* at 82. This court will uphold the circuit court's discretionary decision "if the court reviewed the facts and applied the proper standard of law." *See id.* at 83.

¶ 14. Dr. Plante offers a reasonable argument. He contends that "Dr. Koh's subsequent treatment of Ms. Glenn makes him no more and no less qualified than any other gynecologist to give an expert opinion about standard of care and causation regarding treatment by a different physician." Thus, Dr. Plante continues, but for the Glenns' counsel's failure to comply with the scheduling order, Ms. Glenn could have located other experts who could have testified instead of Dr. Koh. Most critically, Dr. Plante maintains, courts should not allow a party's noncompliance with a scheduling order to set the stage for the client's "compelling circumstances."

¶ 15. Dr. Plante's point is well taken and, depending on the specific circumstances of a case, his theory could prevail. Nevertheless, in this case, we conclude that "under the circumstances presented," *see id.* at 82, Judge White reasonably exercised discretion in concluding that compelling circumstances required Dr. Koh's testimony.[6]

---

[6] Additionally, we note two other factors strongly supporting Judge White's decision. First, notwithstanding the allowance for Dr. Koh's testimony, the Glenns have paid a high price

¶ 16. Dismissal is a drastic remedy—a "particularly harsh sanction" generally reserved for situations involving "bad faith or egregious conduct." *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 274–5, 470 N.W.2d 859 (1991). As the Glenns argue, although the long and complicated procedural history does not "serve as an excuse for missing the due date," that history does serve "to illustrate that [the failure to comply with the scheduling order] may be understandable as human error, but [the failure] was certainly not intentional or egregious."

¶ 17. In a lengthy, written decision, Judge White carefully analyzed the applicable statutes and case law. She examined the specific circumstances of this case and recognized that "compelling circumstances" required Dr. Koh's testimony. Understanding that the "particularly harsh sanction" of dismissal would inevitably follow from acceding to Dr. Koh's wishes, Judge White reasonably exercised discretion in ordering his testimony and denying Dr. Plante's motion to dismiss. *See Johnson*, 162 Wis. 2d at 274.

*By the Court.*—Order affirmed.

---

for counsel's failure to comply with the scheduling order. Despite the fact that Dr. Nash and perhaps other experts could have confirmed Dr. Koh's opinion of Dr. Plante's performance, they will not be allowed to testify. Second, if Dr. Koh's testimony were disallowed in this case, he still could be called to testify regarding Dr. Plante's treatment of Ms. Glenn in the "suit within a suit" that, in all likelihood, would be litigated in the course of a *legal* malpractice action. *See Glamann v. St. Paul Fire & Marine Ins. Co.*, 144 Wis. 2d 865, 870, 424 N.W.2d 924 (1988) ("To establish causation and injury in a legal malpractice action, the plaintiff is often compelled to prove the equivalent of two cases in a single proceeding or what has been referred to as a 'suit within a suit.' " (citation omitted)).

¶ 18. CURLEY, J. *(dissenting).* In *Alt v. Cline*, 224 Wis. 2d 72, 589 N.W.2d 21 (1999), our supreme court determined that a medical expert witness has a right to refuse to provide expert testimony absent compelling circumstances. In recognizing that a doctor has a privilege to be free from testifying against his will, the supreme court observed that:

> A person who has expended resources to attain specialized knowledge should not be forced to part with that knowledge upon demand, absent compelling circumstances. We do not force lawyers to provide services to anyone who walks in the door. We do not force other professionals to provide their services absent compelling circumstances. We see no reason to treat experts in a court of law any differently.

*Id.* at 88.

¶ 19. In *Alt*, an obstetric malpractice case, a doctor who provided prenatal care to the mother sought to be relieved of the court-imposed obligation to testify as an expert witness for the plaintiff in the tort action. Agreeing with the doctor that no compelling need was shown for his expert testimony, the supreme court flatly rejected an identical argument presented here:

> [The Alts] argue that he is a unique witness because he provided prenatal care to Dawn Alt and wrote her discharge summary. We disagree. Dr. Acosta may be unique with respect to the prenatal care provided to Dawn Alt and he must testify as to his observations in that role. However, he does not appear to be unique with respect to the question asked. Dr. Acosta's prenatal care of Dawn Alt and authoring her discharge summary make him no more and no less qualified than any other obstetrician to give an expert opinion . . . .

*Alt v. Cline*, 224 Wis. 2d at 90.

¶ 20. In discussing whether there was a compelling need for Dr. Acosta to testify, the supreme court remarked: "As appears to be the case here, there can be a number of people within a field with similar specialized knowledge capable of rendering an expert opinion on the question or questions asked. In such instance, the opinion of one particular expert is not irreplaceable." *Alt*, 224 Wis. 2d at 89. Adopting the logic set forth in *Mason v. Robinson*, 340 N.W.2d 236, 242 (Iowa 1983), the supreme court said: " '[U]nlike factual testimony, expert testimony is not unique and a litigant will not be usually deprived of critical evidence if he cannot have the expert of his choice.' " *Alt*, 224 Wis. 2d at 89. Like Dr. Acosta in *Alt*, Dr. Koh's role as a treating physician does not make his testimony unique, nor does he possess knowledge in a rare field of medicine where only a few specialized doctors practice.

¶ 21. The majority fails to specifically state the "compelling circumstances" in this case. While the majority notes that the procedural history is an important factor in its analysis, it continues by admitting: "[A]lthough the long and complicated procedural history does not 'serve as an excuse for missing the due date,' that history does serve 'to illustrate that [the failure to comply with the scheduling order] may be understandable as human error, but [the failure] was certainly not intentional or egregious.' " The facts are clear that the Glenns' predicament was caused by their attorney's failure to meet a scheduling order. As pointed out by Judge White and the majority, the Glenns' "counsel simply did not have a justifiable excuse for missing the deadline."

¶ 22. The majority appears to have been swayed into forcing Dr. Koh to testify as an expert based on what the majority perceived to be the only alternative

solution to finding him to be an involuntary expert witness – an outright dismissal of the case. As set forth by the majority, this alternative was caused, in no small part, by the endless morass of new dates and new judges encountered by the Glenns below. But this conclusion ignores the fact that the trial court could have easily permitted the attorneys more time to name experts and left Dr. Koh's right not to testify intact.

¶ 23. Rather than examining the circumstances leading up to the absence of an expert witness and determining whether those circumstances are compelling, the majority appears to apply an outcome determinative test, *i.e.,* regardless of counsel's unjustifiable excuse for missing the deadline, because the result of the error (dismissal of the lawsuit) is compelling (the "particularly harsh sanction" highlighted by Judge White and the majority), the trial court was justified in ordering Dr. Koh's testimony against his wishes. This is not the test. While the outcome may be a factor, the main focus must be whether the circumstances leading to the absence of expert testimony is compelling – not whether the result of the absence is compelling, because the result may often be dismissal, a result for which the Glenns still have a remedy.

¶ 24. Although the case law fails to provide a clear definition of "compelling circumstances," in comparison, the facts here are more undeserving of a finding of compelling circumstances than those found in *Alt.* Here, the "compelling circumstances" consist of Glenn's attorney's complete disregard of the scheduling order's requirement to name expert witnesses by a date certain and the trial court's refusal to amend the order to permit more time for the naming of witnesses. Thus, Dr. Koh's privilege to refuse to testify has been snatched away by the negligence of the very attorney seeking the

doctor's expertise. The effect of the majority's decision is that other attorneys, either unable or unwilling to timely find expert witnesses to back their allegations, and faced with scheduling order deadlines, will simply be able to dragoon treating doctors into the role of their expert witness by crying "compelling circumstances." By doing so, the majority's decision has turned *Alt* on its head.