Sinora GLENN and Christopher Glenn, Plaintiffs-Respondents,

v.

Michael T. PLANTE, M.D. and Family Health Plan, Defendants-Appellants-Petitioners.

Supreme Court

*No. 02–1426. Oral argument January 15, 2004.—Decided March 24, 2004.*

2004 WI 24

(Also reported in 676 N.W.2d 413.)

For the defendants-appellants-petitioners there were briefs by *Michael P. Russart* and *Hinshaw & Culbertson,* Milwaukee, and oral argument by *Michael P. Russart.*

For the plaintiffs-respondents there was a brief by *John K. Brendel* and *Brendel Law Offices,* Brookfield, and oral argument by *John K. Brendel.*

An amicus curiae brief was filed by *William C. Gleisner, III* and *Law Offices of William C. Gleisner, III,* Milwaukee, and *Edward E. Robinson* and *Cannon & Dunphy, S.C.,* Brookfield, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Timothy J. Muldowney, Jennifer L. Peterson* and *LaFollette Godfrey & Kahn,* Madison, and *Mark L. Adams* and *Melanie Cohen,* Madison, on behalf of the Wisconsin Medical Society and American Medical Association.

An amicus curiae brief was filed by *David E. McFarlane, Sheila M. Sullivan* and *Bell, Gierhart & Moore, S.C.,* Madison, on behalf of the Civil Trial Counsel of Wisconsin.

¶ 1. N. PATRICK CROOKS, J.   The petitioner in this case, Michael T. Plante, M.D., (Plante) seeks review of a published court of appeals' decision, *Glenn v. Plante,* 2003 WI App 96, 264 Wis. 2d 361, 663 N.W.2d 375, affirming a non-final order of the Milwaukee County Circuit Court in a medical malpractice action, which stated that a treating physician of the plaintiff Sinora Glenn (Glenn) would be compelled to provide expert testimony at trial. Due to the plaintiffs' counsel's failure to meet the scheduling order deadline for naming expert witnesses, Glenn and her husband, Christopher Glenn, (Glenns) planned to call only one expert witness, Charles Koh, M.D. (Koh). However, Koh refused to provide expert testimony for the plaintiffs. The circuit court ordered Koh to provide expert testimony because it concluded that there were compelling circumstances that rendered his testimony unique. A divided court of appeals affirmed the circuit court order,

concluding that the circuit court reasonably exercised its discretion in ordering Koh to provide expert testimony.

¶ 2. We conclude that Koh should not have been ordered to give expert opinion testimony in this case, since the record does not clearly reflect the question or questions to be asked of Koh, nor was Koh given the opportunity formally to invoke a privilege not to testify. In *Burnett v. Alt,* 224 Wis. 2d 72, 89, 589 N.W.2d 21 (1999), we held that a physician who has asserted his or her privilege not to testify can be required to give expert testimony only if all of the following factors are present: (1) there are compelling circumstances present; (2) the party seeking the testimony has presented a plan for reasonable compensation of the expert; and (3) the expert will not be required to do additional preparation for the testimony. *Alt* does not apply to observations made by a person's treating physician regarding the care and treatment provided to the patient, but rather applies to expert testimony from such a physician as to the standard of care and treatment provided by another physician. Where there is a correct application of *Alt,* the determination as to whether compelling circumstances exist involves a discretionary decision by the circuit court judge. The compelling circumstances should focus on whether there is unique or irreplaceable opinion testimony sought from an expert, not on procedural aspects of the case.

¶ 3. The circuit court in this case misapplied the standard set forth in *Alt,* as there was no definite question or questions before the court and no clear formal invocation by Koh of a claimed privilege not to testify. Because the circuit court misapplied our holding in *Alt,* it erroneously exercised its discretion. Thus, we

579

reverse the decision of the court of appeals, which affirmed the circuit court order, and remand the cause to the circuit court for further proceedings in accord with this decision.

I

¶ 4.   The Glenns allege the following:   In September 1995, Glenn experienced abdominal pain that was determined to be a right ovarian cyst. As a result of this diagnosis, she was referred by her physician to Plante, a gynecologist in the Family Health Plan group. Plante recommended to Glenn that she undergo a laparotomy[1] with a right ovarian cystectomy.[2] Plante performed the recommended surgery, but also performed a right oophorectomy[3] allegedly without Glenn's knowledge or consent. Glenn continued to experience abdominal pain after this surgery. Plante then recommended that Glenn undergo a hysterectomy.[4] Glenn wanted to obtain a second opinion before undergoing the operation. Glenn's primary physician provided her with the name of another specialist, but Glenn's HMO advised her that she was ineligible to make an appointment with this specialist. Thus, although Glenn desired to have more

---

[1] Laparotomy is a surgical incision into the abdominal wall. *The American Heritage Dictionary of the English Language* 1013–14 (3d ed. 1992).

[2] Cystectomy is the surgical removal of a cyst. *The American Heritage Dictionary of the English Language* 466 (3d ed. 1992).

[3] Oophorectomy is the surgical removal of an ovary. *The American Heritage Dictionary of the English Language* 1266 (3d ed. 1992).

[4] Hysterectomy is the surgical removal of the uterus. *The American Heritage Dictionary of the English Language* 891 (3d ed. 1992).

children, she relied on Plante's determination and underwent a hysterectomy. After the operation, Glenn continued to experience the abdominal pain and also developed symptoms commonly associated with menopause. In addition, she suffered from depression, which she claimed was due to her inability to conceive additional children. In order to relieve her persistent pain, Glenn visited Koh, a physician outside of the Family Health Plan group. Koh removed abdominal adhesions, and Glenn's pain subsided. Koh suggested to Glenn that the procedures performed by Plante were not necessary, and the Glenns thereafter consulted an attorney.

¶ 5. The Glenns filed this action in Milwaukee County Circuit Court against Plante and Family Health Plan. In the complaint, Glenn alleged that Plante failed to exercise the degree of care, skill, and judgment that physicians reasonably and usually exercise under such circumstances. As a result of Plante's alleged negligence, Glenn contended that she was damaged both mentally and physically. Glenn further alleged that Family Health Plan was liable for Plante's negligence, and was further negligent in failing to provide her with alternate physicians, or opportunities for other treatment that might have alleviated her pain. Glenn's husband also alleged that he suffered loss of consortium, society, and companionship with his wife, as well as losing his ability to have additional children with his wife, due to Plante and Family Health Plan's negligence. The case was assigned to Circuit Judge Christopher R. Foley, and a scheduling conference was set for June 10, 1999. Glenn subsequently requested mediation with the Medical Mediation Panels. Plante and Family Health Plan requested that the scheduling conference be reset for a time after the mediation period

581

had ended. Accordingly, Judge Foley reset the scheduling conference to July 1, 1999.

¶ 6. As a result of judicial rotation, the case was reassigned to Circuit Judge William J. Haese. Plante and Family Health Plan immediately filed a request for judicial substitution, and Circuit Judge Diane S. Sykes (now Justice Sykes) was assigned to the case. Judge Sykes held a scheduling conference on June 23, 1999, and required the Glenns and Plante and Family Health Plan to name their expert witnesses by September 23 and December 23, 1999, respectively. The case was then reassigned to Circuit Judge Dominic S. Amato effective November 8, 1999. On December 27, 1999, Plante and Family Health Plan filed a motion to dismiss due to the Glenns' failure to provide the names of their expert and lay witnesses, as well as their failure to provide a statement of itemized special damage claims that was also due on September 23, 1999. In response, the Glenns named Koh, Dr. Sul Chung, and Dr. David Nash as expert witnesses, and moved the court to amend the scheduling order for purposes of extending the time available to name expert witnesses. Judge Amato ordered that the Glenns were not permitted to call any expert witnesses other than Chung[5] and Koh. Judge Amato further ordered that, by February 24, 2000, the Glenns had to provide the court and opposing counsel with, among other information, written reports involving the physicians' areas of expertise and their opinions regarding this case. The Glenns' counsel never provided

---

[5] Counsel for the Glenns ultimately decided not to call Dr. Sul Chung, who was a psychiatrist treating Sinora Glenn's depression, since the Glenns' counsel expressed concern that this testimony might cloud the medical malpractice issue.

written reports regarding the expert witnesses, or a statement of itemized special damage claims, to the court.

¶ 7.   On February 24, 2000, Koh wrote a letter to Judge Amato, stating his concern about the treatment Glenn received from Plante and another doctor in the Family Health Plan group. Although he felt that "the hysterectomy and the removal of the left ovary (were) unwarranted," Koh stated that he did not wish to be a witness in this case. Koh stated that he was writing the letter at the request of the Glenns' counsel, who had informed him that such a letter was necessary in order for the Glenns to file suit. Nevertheless, Koh conveyed his dissatisfaction with having to write the letter and noted that few doctors would want to be part of a malpractice action against a fellow local physician. In a letter to the Glenns' counsel dated November 6, 2000, Koh again noted his displeasure with counsel's attempt to secure his expert testimony and stated the following:   "I clearly stated at the time of the meeting that I would not be (an) expert witness as I was (Glenn's) treating physician."

¶ 8.   Judge Amato recused himself on December 20, 2000, and the case was assigned to Circuit Judge David A. Hansher for further proceedings. The case was ultimately reassigned to Circuit Judge Maxine A. White on January 2, 2001. The case was adjourned on January 29, 2001, due to Family Health Plan's involvement in bankruptcy proceedings. In May 2001, the parties stipulated that Family Health Plan would be dismissed from the case, and all claims against it were waived. The Glenns continued their suit against Plante alone.

¶ 9.   Trial was ultimately set for February 4, 2002. However, on January 25, 2002, the Glenns' counsel requested an adjournment, stating that he had recently

learned that Koh would be out of the country during the time counsel had planned to examine Koh. The circuit court adjourned the scheduled trial date and directed the parties to file appropriate motions. The Glenns' counsel then made a motion requesting additional time to name expert witnesses. Plante opposed providing the Glenns with additional time to secure other expert witnesses and filed a motion to dismiss the case.

¶ 10.   Judge White denied the Glenns' request for more time to name expert witnesses and denied Plante's motion to dismiss the Glenns' complaint.[6] Judge White concluded that based on Koh's existing report and opinion, he would be compelled to provide expert testimony. The circuit court noted that *Alt* provided that, if parties can demonstrate a compelling need, an expert can be forced to testify. In order for a need to be compelling, the circuit court stated that the following requirements must be met under *Alt:* (1) a compelling need exists for the expert's opinion/ testimony; (2) there is a plan for reasonable compensation for the expert; and (3) the expert's testimony can only be compelled with respect to existing opinions.

¶ 11.   After a lengthy discussion of the circumstances and principles involved in *Alt,* the circuit court ultimately concluded that Koh's testimony fell under the compelling need exception, and that all three prongs of the *Alt* standard were satisfied. With respect to the compelling need prong, the circuit court concluded that Koh's testimony concerning the treatment

---

[6] A circuit judge clearly has discretionary authority to allow the amendment of a scheduling order and to permit the naming of additional expert witnesses in accord with Wis. Stat. § 802.10 (2001–02). The circuit judge in this case retains such authority upon remand.

he provided to Glenn would be unique, as he was her treating physician. The circuit court further noted that it presumed that a reasonable plan for Koh's compensation could be shown, and Koh would provide testimony only as to his pre-existing opinions of Glenn's condition. Plante then petitioned the court of appeals for leave to appeal the non-final order issued by the circuit court, which would require Koh to give expert medical testimony in this case.

¶ 12. A divided court of appeals, Judges Charles B. Schudson and Ted E. Wedemeyer, Jr., affirmed the decision of the circuit court. Judge Schudson, writing for the majority, concluded that " 'under the circumstances presented,' " the circuit court reasonably exercised its discretion when it concluded that compelling circumstances required that Koh provide expert testimony. The majority noted that the circuit court carefully analyzed the relevant facts and applicable statutes and case law in reaching its decision. The majority further noted that, although the complicated procedural history of the case did not excuse the Glenns' counsel's failure to provide the witness list, his failure to do so could not be deemed intentional or egregious. Given that dismissal would be a particularly harsh sanction, the majority concluded that the circuit court reasonably exercised its discretion in deciding to order Koh to provide expert opinion testimony.

¶ 13. In her dissent, Judge Patricia S. Curley noted that the testimony sought from Koh was similar to the testimony sought from Dr. Acosta in *Alt*. Given the similarities, Judge Curley concluded that simply because Koh was Glenn's treating physician did not automatically render his testimony unique. The dissent criticized the majority for failing to specify what compelling circumstances were present that would justify

requiring Koh to testify and offer expert opinion testimony. The dissent surmised that the compelling circumstances in this case were the Glenns' counsel's failure to meet the scheduling order deadline for submitting the names of witnesses and the circuit court's refusal to extend the time to name more witnesses. Judge Curley noted that counsel's negligence in this case had the effect of depriving Koh of his privilege to refuse to testify. Further, the dissent noted that the majority appeared to apply an outcome determinative test; that is, because they perceived the dismissal of the case to be a compelling circumstance, the majority concluded that the circuit court was justified in requiring Koh to give expert opinion testimony.

## II

¶ 14.  We now consider whether the circumstances were such that Koh should have been required to give expert opinion testimony in this case. Whether a witness has a legal privilege to refuse to provide expert opinion testimony is a question of law, which we review de novo. *Alt,* 224 Wis. 2d at 84. *See also Vultaggio v. Yasko,* 215 Wis. 2d 326, 330, 572 N.W.2d 450 (1998).

¶ 15.  Plante contends that expert witnesses have a broad privilege to refrain from providing expert testimony in a given case and, as stated in *Alt,* only a showing of compelling circumstances can require an unwilling expert to testify. Plante notes that, simply because Koh was Glenn's treating physician, it does not mean that he is uniquely qualified to render expert testimony in this case. In fact, Plante argues, Koh would not provide any unique testimony regarding Glenn's condition. Moreover, Plante maintains that, while lack of availability of other expert witnesses may

586

be a factor that a court could consider, this is true only with respect to the number of experts in a given field. Here, Plante contends that the lack of availability of expert witnesses is due to Glenn's counsel's own failures, not because of a shortage of the number of expert witnesses in the field of gynecology.

¶ 16.   Plante asserts that the circuit court improperly concluded that there were compelling circumstances in this case that would provide a justification for compelling Koh's testimony. Opposing counsel's negligence in this case, Plante contends, is not a compelling circumstance that would require Koh to provide such testimony. Plante further states that the circuit court erred when it reasoned that dismissal would be a drastic sanction, as it was the Glenns' counsel's own error which could have precipitated this result. Plante asserts that, while dismissal is a harsh result, it is warranted in this case due to counsel's inexcusable failure to name additional expert witnesses when it became apparent that Koh would not provide expert opinion testimony.

¶ 17.   In contrast, the Glenns contend that there is a compelling need for Koh to provide expert testimony because his personal observations of Sinora Glenn's condition render his testimony unique. The Glenns state that Koh will be fully compensated for his expert testimony, and the circuit court has already limited Koh's testimony to his pre-existing opinion. Thus, the Glenns maintain that the circuit court correctly applied the factors in *Alt* to this case. The Glenns note that Koh has never formally asserted a privilege not to testify. Nevertheless, if this court concludes that Koh will not testify, the Glenns contend that this court must also conclude that Koh waived his privilege not to provide expert testimony, as Koh urged Sinora Glenn to bring

this action, referred her to another specialist, and told her that he would testify on her behalf.

¶ 18.    The Glenns further note that counsel's failure to meet the deadline for submitting the witness list was not egregious. Instead, the Glenns contend that it was due to counsel's belief that a newly assigned judge would set his or her own deadline for the naming of witnesses. Given the convoluted procedural history of this case, the Glenns assert that it is understandable, but nevertheless regrettable, that counsel could miss such a deadline. Moreover, the Glenns caution that if doctors are permitted to avoid testifying whenever they choose to, this will result in a very small group of physician experts who could charge an inflated price for their services or, conversely, an influx of less qualified doctors that are prepared to testify for a requisite fee.

¶ 19.    We conclude that Koh cannot be compelled to give expert testimony in this case, since the record does not include the questions proposed to be asked of Koh, nor was Koh given the opportunity formally to invoke a privilege not to testify.

¶ 20.    In general, the public has a right to every person's evidence at trial. *Alt,* 224 Wis. 2d at 85; *State v. Gilbert,* 109 Wis. 2d 501, 505, 326 N.W.2d 744 (1982). At its core, the adversary system is based upon the proposition that an examination of all of the persons possessing relevant information, which will lead to the discovery of all of the relevant facts, will produce a just result. *Gilbert,* 109 Wis. 2d at 505. *See also United States v. Nixon,* 418 U.S. 683, 709–10 (1974). Nevertheless, this fundamental legal principle is tempered by constitutional, common law, or statutory privileges. *Nixon,* 418 U.S. at 709–10; *Gilbert,* 109 Wis. 2d at 505. Because the adversary system places a premium on the discovery of

relevant information, courts are cautious not to overly interfere with this goal. The United States Supreme Court has noted that "these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Nixon,* 418 U.S. at 710. Moreover, this court has commented that "(p)rivileges are the exception, not the rule." *Alt,* 224 Wis. 2d at 85.

■

¶ 21.   In Wisconsin, a person may not refuse to be a witness, "(e)xcept as provided by or inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin. . . . " Wis. Stat. § 905.01 (2001–02).[7] *See also Alt* 224 Wis. 2d at 85. Wisconsin Stat. § 907.06 implicitly provides expert witnesses with such a privilege. In relevant part, § 907.06 states: "The judge may appoint any expert witnesses agreed upon by the parties, and may appoint witnesses of the judge's own selection. An expert witness shall not be appointed by the judge unless the expert witness consents to act." We have concluded that, implicit in this statutory language, an expert witness has the privilege to refuse to testify if he or she is called by a litigant. *Alt,* 224 Wis. 2d at 86.

¶ 22.   Since expert witnesses may assert a privilege not to testify, we must now determine whether the proposed expert in this case, Koh, could properly assert a privilege not to testify or whether he will be compelled to provide expert opinion testimony as to the standard of care and treatment provided by another physician. Both the Glenns and Plante cite *Alt* as supporting their

---

[7] Unless otherwise indicated, all references to Wisconsin Statutes are to the 2001–02 edition.

theories of the case, and the circuit court and the court of appeals have referenced *Alt* extensively in reaching conclusions. Under such circumstances, we find it necessary to go into some detail regarding the background and principles underlying the *Alt* decision.

¶ 23.  The *Alt* case arose out of the alleged negligence of a physician during the delivery of a child by cesarean section. Dawn Alt went into labor, and Richard S. Cline, M.D. (Cline) performed a cesarean section to deliver her child, Cody Alt. *Id.* at 80. At birth, Cody Alt had varying severe temporary and permanent injuries. *Id.* Dawn Alt, Mark Alt, and Cody Alt, by his guardian ad litem, (Alts) brought suit against numerous parties, including Cline, alleging that the medical professionals were negligent when delivering Cody. *Id.* During the discovery phase of the proceedings, the Alts named numerous physician expert witnesses, including Ernesto L. Acosta, M.D. (Acosta). *Id.* Although Acosta was not present at Dawn's delivery, he did provide prenatal care to Dawn and wrote her discharge summary after her delivery of Cody. *Id.* The Alts did not name Acosta as a defendant. *Id.*

¶ 24.  During Acosta's second deposition, his attorney directed him not to answer questions which would require him to render an expert opinion, as opposed to simply relaying his observations of Dawn's condition. *Id.* at 81. The relevant deposition question posed to Acosta, relating to Cline's treatment, was as follows: "No matter what the cause, a patient with a history of term pregnancy and a gush of blood[,] that's abnormal?" *Id.* The circuit court determined that the question should have been answered and imposed sanctions on Acosta's attorney for directing him not to answer. *Id.* at 81–82. The court of appeals affirmed. *Id.* at 82.

¶ 25. After concluding that the relevant question required Acosta to render an expert opinion, this court then addressed the issue of whether Acosta had a legal privilege to refuse to answer such a question.[8] We concluded that Wis. Stat. § 907.06 conferred a privilege on witnesses to refuse to provide such expert opinion testimony. *Id.* at 86. Noting that such a privilege existed, we were then faced with the task of determining the extent of such privilege. We recognized that different jurisdictions have varying approaches as to how broad the privilege should be. *Id.* at 87. In analyzing whether an absolute privilege, a narrow qualified privilege, or a broad qualified privilege best served the principles underlying the adversary system, we stated the following:

> The appropriate scope of expert privilege requires a balance between the right of expert witnesses to be free from testifying against their will and the needs of the court and litigants for testimony. A person who has expended resources to attain specialized knowledge should not be forced to part with that knowledge upon demand, absent compelling circumstances.

*Id.* at 88.

¶ 26. Although we recognized that a person who has specialized knowledge in a certain area should not be forced to testify, we noted that, in certain circumstances, an expert witness's testimony could be uniquely necessary. *Id.* In *Alt,* we concluded that the

---

[8] We also addressed the issue of whether the circuit court erroneously exercised its discretion in imposing sanctions on Acosta's attorney for directing him not to answer the question. *Burnett v. Alt,* 224 Wis. 2d 72, 92, 589 N.W.2d 21 (1999). Because that issue is irrelevant to the case at hand, we do not discuss it further here.

approach adopted by the Iowa Supreme Court in *Mason v. Robinson,* 340 N.W.2d 236 (Iowa 1983), struck the appropriate balance between the need for testimony to assist the trier of fact and the privilege an expert possesses to refuse to testify. *Id.* at 89. Thus, we held that "absent a showing of compelling circumstances, an expert cannot be required to give expert testimony whether the inquiry asks for the expert's existing opinions or would require further work." *Id.* We outlined two other requirements in addition to the mandate that there be compelling circumstances present. We stated that the party seeking the expert's testimony was required to present a plan of reasonable compensation for the expert's services. *Id.* Moreover, we concluded that an expert could be required to testify only as to his or her existing opinion and could never be required to do additional preparation. *Id.*

¶ 27. In applying these requirements to the facts presented in *Alt,* we concluded that, while Acosta had to testify regarding his observations made during the prenatal care he provided to Dawn Alt, Acosta was not so unique as to be required to answer a deposition question that required his expert opinion about another physician's treatment. *Id.* at 90. Thus, a physician who invokes the privilege could still be required to testify regarding his or her observations as the patient's treating physician regarding the care and treatment provided to the patient, but not on the standard of care and treatment provided by another physician. Moreover, when there are other persons within a specialized field capable of rendering an expert opinion, we noted that the opinion of one such expert is not irreplaceable.[9] *Id.*

[9] In contrast, the witnesses in *Kaufman v. Edelstein,* 539 F.2d 811 (2d Cir. 1976), were compelled to give expert testimony

at 89. Because expert testimony is often times not unique, litigants will not usually be harmed if they cannot have their preferred choice for an expert.[10] *Id.*

¶ 28. Using the principles set forth in *Alt,* we conclude that Koh should not have been required to provide expert opinion testimony, given the lack of an appropriate record in this case. Simply because Koh was Glenn's treating physician, it does not necessarily follow that his expert opinion is unique or irreplaceable and must be required. Nevertheless, we conclude that a treating physician may still be required to testify regarding his or her observations relating to the care or treatment provided to his or her patient, as such compulsion is considerably different than forcing a physician to testify as to the standard of care and treatment provided by another physician.

¶ 29. We acknowledge that this case took a long and circuitous path through the circuit courts, and the frequent scheduling and rescheduling of proceedings certainly complicated matters to some extent. We further recognize that, if Koh does not testify and the circuit court declines to permit the naming of additional

---

in the government's antitrust suit against IBM because the witnesses possessed expert knowledge on the computer industry. Their testimony was unavailable from any other source and, thus, vital to the trial. The *Kaufman* case is significantly different from the present circumstances, as Koh is not the only expert in the field of gynecology capable of providing expert testimony for the Glenns.

[10] *See also* Janet Fairchild, Annotation, *Right of Independent Expert to Refuse to Testify as to Expert Opinion,* 50 A.L.R.4th 680 (2004) ("[A] litigant will not usually be deprived of critical evidence if he cannot have the expert of his choice.").

expert witnesses, the Glenns' case may ultimately be dismissed. Nevertheless, we decline to afford these considerations any substantial weight in reaching our conclusion. Although Koh was the only witness, based on the circuit court's orders, that the Glenns could call, and Koh's apparent refusal to testify and offer his expert opinions might result in a dismissal, his testimony was not automatically rendered unique. We agree with Plante's assessment that the compelling circumstances determination must focus on whether there is unique or irreplaceable opinion testimony sought from an expert, not on procedural aspects of the case.

¶ 30. We decline to adopt an outcome determinative approach where testimony would become compelling if the absence of such testimony would adversely affect a litigant. Instead, we re-emphasize *Alt*'s requirement that there must be a link between a finding of compelling circumstances and the uniquely necessary or irreplaceable opinion testimony that the expert could provide. Here, Koh's testimony regarding liability and standard of care does not appear to be uniquely necessary, as other experts in the field of gynecology likely could testify as to their opinions on such issues. Thus, the Glenns would not normally be harmed if they were denied their choice of an expert as, barring counsel's failure to meet the appropriate deadline, the Glenns would have been able to draw upon the opinion testimony of another expert.

¶ 31. Even if Koh is not required to give expert opinion testimony in this case, he may be compelled to testify as to his observations as Glenn's treating physician. Such compulsion is considerably different than forcing a physician to testify as to the standard of care and treatment provided by another physician. As noted by Koh in his letter, forcing a physician to serve as the

lead expert witness in a medical malpractice action against a fellow local physician would be, at the very least, uncomfortable for such expert. Thus, the standard set forth in *Alt* assures experts that their opinions will not be required barring circumstances that make their testimony uniquely necessary. Nevertheless, we emphasize that a physician can be required to testify as to his or her own observations regarding his or her care and treatment provided to the patient while serving as the patient's treating physician.

¶ 32.  We further conclude that where there is a correct application of *Alt*, such that there is an exact question or questions regarding expert opinion, and a clear invocation of the privilege by the expert witness, the determination as to whether compelling circumstances exist, or unique or irreplaceable testimony is sought, is left to the discretion of the circuit court. Here, the circuit court, given the lack of a sufficient record, misapplied *Alt* in deciding that Koh's expert testimony should be compelled. The record does not include any direct question or questions that required Koh to render his expert opinion. Moreover, Koh never clearly asserted a claimed privilege not to answer questions that required his opinion. Certainly, it can be inferred from Koh's conduct that he did not wish to testify. Koh's letter to the circuit court stating that he urged the Glenns' counsel to find an out-of-state expert, Koh's letter to the Glenns' counsel stating that he did not want to testify, and Koh's departure from the country during the time counsel had scheduled him to testify all suggest that he was reluctant to testify. However, it is clear that there was never a formal assertion of privilege in this case. It is necessary to have an exact question or questions requiring expert opinion

testimony, and a clear assertion of a privilege not to provide such expert opinion testimony, before the circuit court can decide whether compelling circumstances exist. Because the circuit court did not have the question or questions at issue and lacked a clear assertion of a privilege, we conclude that the circuit court erroneously exercised its discretion in this case.

¶ 33. At this time, we note that no trial has taken place, apparently no physicians, including Koh, have been deposed, and there is a need for the circuit court to hold another scheduling conference and issue a new scheduling order. Moreover, the record is unclear what questions Koh will be asked or whether he will clearly and formally invoke his privilege not to testify. Given these circumstances, it is certainly necessary to remand this case to the circuit court.

### III

■

¶ 34. In sum, we conclude that Koh should not have been ordered to give expert opinion testimony in this case, since the record does not clearly reflect the question or questions to be asked of Koh, nor was Koh given the opportunity formally to invoke a privilege not to testify. According to *Alt,* a person who has asserted his or her privilege not to testify and offer expert opinion testimony can be required to give such expert testimony only if all of the following factors are present: (1) there are compelling circumstances present; (2) the party seeking the testimony has presented a plan for reasonable compensation of the expert; and (3) the expert will not be required to do additional preparation for the testimony. *Alt* does not apply to observations made by a person's treating physician relating to the care or treatment that he or

she provided to the patient, but rather applies to expert opinion testimony from such a physician as to the standard of care and treatment provided by another physician. Where there is a correct application of *Alt,* the determination as to whether compelling circumstances exist involves a discretionary decision by the circuit court judge.

¶ 35. The compelling circumstances determination should focus on whether there is unique or irreplaceable opinion testimony sought from an expert, not on the procedural aspects of the case. Because the circuit court misapplied our holding in *Alt,* it erroneously exercised its discretion. Thus, we reverse the decision of the court of appeals, which affirmed the circuit court's order, and remand the cause to the circuit court for further proceedings in accord with this decision.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 36. DIANE S. SYKES, J., did not participate.